## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re DH, a minor, by and through her natural guardian, CRH, | : : : | |
| Plaintiff, | : : | No. |
| v. | : : : | |
| CITY OF PITTSBURGH and PORT AUTHORITY TRANSIT OF ALLEGHENY COUNTY, | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

## **COMPLAINT**

Plaintiff DH, a minor, by and through her natural guardian CRH ("DH"), hereby files this Complaint as follows:

### INTRODUCTION

1. Defendant City of Pittsburgh (the "City") has a widespread custom or practice of permitting the Pittsburgh Bureau of Police ("PBP") to engage in high speed pursuits over minor traffic offenses significantly more than any other type of offense, which cause more property damage and bodily injuries than pursuits initiated for any other reason. This custom or practice has resulted in an increased and disproportionately high number of unnecessary and unjustified high-speed pursuits in the City because minor traffic violations are far more likely to occur than felonious acts warranting such pursuits. This lawsuit contends that the City has acted with deliberate indifference to this known risk of serious bodily harm by permitting the PBP to continue this custom or practice and by otherwise failing to train, supervise or discipline those police officers who engage in such unjustified life-threatening pursuits in violation of the Fourteenth Amendment to the United States Constitution.

2.     The pursuit in this case was initiated over an alleged minor traffic offense. Despite the pursuit continuing through heavily trafficked areas during peak business hours, into oncoming traffic, and through stop lights and signs at double the posted speed limit, without due regard for the safety of others—and without due regard for the danger caused by the pursuit over enforcement of a mere traffic violation—no member of the PBP terminated it. The pursuit culminated in permanent, catastrophic and life-threatening injuries to an innocent passenger who was just 12-years-old.

## PARTIES

3.     DH is a minor child residing in Pittsburgh, Pennsylvania in the Western District of Pennsylvania. At all relevant times, DH was a known passenger of a vehicle being driven by Donovan Robinson ("Robinson").

4.     The City is a city of the second class located in the Commonwealth of Pennsylvania. The City operates and maintains the PBP, which has a principal place of business at 1203 Western Avenue, Pittsburgh, Pennsylvania 15233. Pittsburgh also maintains and controls a Department of Law, which has a principal place of business at 414 Grant Street, 313 City-County Building, Pittsburgh, Pennsylvania 15219. At all relevant times, the City was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with the City's policies, customs and practices.

5.     Defendant Port Authority Transit of Allegheny County ("PATCO") is a county-owned and state-funded agency existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at Heinz 57 Center, 345 Sixth Avenue, Third Floor, Pittsburgh, Pennsylvania 15222. PATCO owns and operates the Port Authority Police and Security Services

Department ("Port Authority Police"). At all relevant times, PATCO was acting by and through its duly authorized employees, agents and/or administrators, who at all relevant times were acting within the course and scope of their employment, under color of state law, and in accordance with PATCO's policies, practices and customs.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania and because DH resides in this District.

## FACTS

8. On November 22, 2015, Donovan Robinson ("Robinson") was operating a white Chevrolet Impala with the permission of the owner, Malik Bridget.

9. At that time, DH, who is Robinson's half-sister, was situated in the backseat of the vehicle, while DH's friend was in the passenger seat.

10. At all relevant times, DH was 12 years old.

11. While operating the vehicle in the Larimer neighborhood of Pittsburgh's East End after visiting his father, Robinson came to a full stop at a traffic sign and then lawfully proceeded through the intersection of Shetland Street and Larimer Avenue.

12. At that time, Pursuing Officer One and Pursuing Officer Two, both patrol officers for the PBP, were on patrol and saw the white Chevrolet Impala being driven by Robinson.

13. Pursuing Officer One was driving and Pursuing Officer Two was the passenger.

3

14. Neither Pursuing Officer One nor Pursuing Officer Two had any information to suspect that Robinson was engaging in, or had engaged in, any violent or other felonious acts.

15. Nevertheless, despite not having information to believe that Robinson was engaging in, or had engaged in, any felonious act—and despite not suspecting Robinson of having committed any other crime—Pursuing Officer One and Pursuing Officer Two began following Robinson for at least three minutes at a close distance.

16. During that time, Robinson obeyed all traffic commands and signals and committed no criminal acts.

17. During that time, and at all relevant times, Pursuing Officer One and Pursuing Officer Two were able to observe that there were two children passengers in the vehicle, one in the front passenger seat and one—DH—in the backseat.

18. Pursuing Officer One and Pursuing Officer Two increased their speed while following Robinson's vehicle without activating their visual or audible signals and therefore Robinson increased the speed of his vehicle in response.

19. As Pursuing Officer One and Pursuing Officer Two closely followed Robinson at increasing speeds, Robinson eventually fled.

20. After Robinson fled, Pursuing Officer One and Pursuing Officer Two initiated a high-speed pursuit of Robinson based on an alleged minor traffic offense that was alleged to have occurred pre-pursuit.

21. Pursuing Officer One and Pursuing Officer Two alerted dispatch of the pursuit at the time they initiated it, including their supervising sergeant at that time ("Pursuing Sergeant").

22. Pursuing Sergeant acknowledged over the radio that the pursuit was initiated over an alleged minor traffic offense and permitted the pursuit to continue.

23. The pursuit began around 5:23 p.m. during peak business hours and continued into the Shadyside neighborhood of Pittsburgh's East End, which is a highly populated residential and commercial area of Pittsburgh.

24. Pursuing Officer One and Pursuing Officer Two remained within only a few car lengths of the vehicle being driven by Robinson during the entire pursuit and called out those distances to Pursuing Sergeant, yet Pursuing Sergeant never terminated the pursuit.

25. On more than one occasion during the pursuit, Pursuing Officer One and Pursuing Officer Two traveled into oncoming traffic and ran stop lights and signs to pursue Robinson.

26. Pursuing Sergeant was made aware over the radio that Pursuing Officer One and Pursuing Officer Two were traveling into oncoming traffic and running stop lights and signs to pursue Robinson over an alleged minor traffic offense, yet none of them terminated the pursuit.

27. According to at least one eye witness, Pursuing Officer One and Pursuing Officer Two drove onto pedestrian sidewalks to pass traffic to gain distance on Robinson.

28. Pursuing Sergeant made aware over the radio that Pursuing Officer One and Pursuing Officer Two drove onto pedestrian sidewalks to pass traffic to gain distance on Robinson over an alleged minor traffic offense, yet he still did not terminate the pursuit.

29. Pursuing Officer Three, a patrol officer for the PBP, entered the pursuit after Pursuing Officer One and Pursuing Officer Two exited a one-way street in the wrong direction and ran through a stop sign in pursuit of Robinson.

30. At the time he entered the pursuit, Pursuing Officer Three was made aware through radio communications that Pursuing Officer One and Pursuing Officer Two were pursuing Robinson over an alleged minor traffic violation.

5

31. Pursuing Officer Three entered the pursuit, and Pursuing Officer One and Pursuing Officer Two continued the pursuit, because the PBP permits high-speed pursuits for minor traffic offenses.

32. Pursuing Officer Four, a sergeant with the PBP, and Pursuing Officer Five, an officer with the PBP, then joined the pursuit.

33. At the time they entered the pursuit, Pursuing Officer Four and Pursuing Officer Five were made aware through radio communications that Pursuing Officers One, Two and Three were pursuing Robinson over an alleged minor traffic violation.

34. Pursuing Officer Four and Pursuing Officer Five entered the pursuit, and Pursuing Officers One, Two and Three continued the pursuit, because the PBP permits high-speed pursuits for minor traffic offenses.

35. Nevertheless, after joining the pursuit, Pursuing Officers One, Two, Three, Four and Five all drove into oncoming traffic, ran stop lights and signs, and drove at least double the posted speed limit to pursue Robinson over an alleged minor traffic violation.

36. Pursuing Sergeant was made aware that five officers in the PBP—i.e., Pursuing Officers One, Two, Three, Four and Five—were maintaining the pursuit of Robinson over an alleged minor traffic offense while driving into oncoming traffic, running stop lights and signs, and while driving at least double the posted speed limit through a highly populated residential and commercial area of Pittsburgh, yet he failed to terminate the pursuit.

37. Pursuing Officer Six and Pursuing Officer Seven, both officers for the Port Authority Police, who were each aware through radio communications that officers for the PBP were pursuing Robinson over an alleged minor traffic offense, joined the pursuit on behalf of PATCO.

6

38. Pursuing Officer Six and Pursuing Officer Seven similarly drove into oncoming traffic, ran stop lights and signs, and drove at least double the posted speed limit to pursue Robinson over an alleged minor traffic offense.

39. Pursuing Officers One, Two, Three, Four, Five, Six and Seven are referred to as the "Pursuing Officers."

40. At all times during the pursuit, the Pursuing Officers were aware that they were pursuing Robinson in a dangerous manner through a highly populated residential and commercial area of Pittsburgh over an alleged minor traffic offense, including driving into oncoming traffic and through stop lights and signs at double the posted limit.

41. The pursuit culminated in a head-on collision of the vehicle being driven by Robinson and the vehicle of an innocent bystander.

42. At the time of the collision, Robinson and the Pursuing Officers were traveling in the opposite direction of oncoming traffic on Baum Boulevard in the Shadyside neighborhood of Pittsburgh's East End—a neighborhood with one of the highest populations of residential and commercial traffic in Pittsburgh.

43. At the time of the collision, Pursuing Officer One and Pursuing Officer Two were approximately a car lengths' distance from the vehicle being driven by Robinson.

44. At the time of and leading up to the collision, Pursuing Sergeant knew the Pursuing Officers continued to pursue Robinson through heavily trafficked areas, into oncoming traffic and through stop lights and signs at double the posted speed limit over an alleged minor traffic offense, yet he failed to terminate the pursuit.

45. At all relevant times, the Pursuing Officers knew that the high-speed pursuit of the vehicle driven by Robinson created a substantial risk of serious bodily harm and/or death to

persons other than and in addition to the driver, including innocent passengers in the vehicle being pursued, and other motorists and their passengers and innocent bystanders who came within the vicinity of the pursuit.

46. At all relevant times, the Pursuing Officers knew that their high-speed pursuit of Robinson caused him to accelerate the speed of his vehicle creating a substantial risk of and/or likelihood that his vehicle would collide with another vehicle, object or innocent bystander.

47. DH was found unresponsive at the scene of the accident.

48. She was transported to UPMC Mercy in critical condition.

49. As a direct and proximate result of the pursuit, DH suffered significant physical injuries, some of which are permanent in nature.

50. DH also suffered significant emotional pain and suffering because of the pursuit.

51. In total, five people—including four innocent bystanders and passengers—were injured because of a pursuit over an alleged minor traffic offense.

52. In response to the pursuit, Former Chief of the PBP Cameron McLay issued Chief's Order #15-009 ("Chief's Order #15-009"), dated November 23, 2016, stating, in full:

Police Bureau General Order 40-5, Motor Vehicle Pursuits, clearly states,

"*The primary goal of the Pittsburgh Bureau of Police is the protection of life and property…It is the policy of the Pittsburgh Bureau of Police that a <u>motor vehicle pursuit is justified only when the necessity of immediate apprehension outweighs the level of danger created by the pursuit.</u>*

The policy goes on to discuss the importance of officers and supervisors holding themselves accountable for exercising sound judgment, as informed by experience, common sense and training.

**Regrettably, too many instances occur where our police pursuits create greater danger to the public than the violations we are seeking to address through enforcement.** As a result, I am directing a full review of this policy, as well as our systems of accountability for compliance with this important policy.

> In the interim, **effective immediately, a member of the Pittsburgh Bureau of Police may only initiate a motor vehicle pursuit where she/he has reasonable belief the individual(s) in the offending vehicle is involved in a violent, felony crime. Members shall not engage in a motor vehicle pursuit for traffic violations only**.

(emphasis added and in original).

53.     According to Geoffrey Alpert, an expert on police pursuits and a criminology professor at the University of South Carolina, the pursuit of Robinson over an alleged minor traffic offense—and thus the corresponding injuries to DH—would not have occurred had Chief's Order #15-009 been implemented beforehand.

54.     Elizabeth Pittinger, Executive Director of the Citizen Police Review Board in the City, called the order long overdue and stated that the number of pursuits by the PBP had been increasing since 2011, with 53 to 54 percent of pursuits being initiated for minor traffic offenses, while only 10 percent being initiated over felony offenses.

55.     Indeed, in 2012, the PBP engaged in 184 high-speed pursuits, 96 of which—or 52.2 percent—were initiated because of minor traffic offenses. *See* Pennsylvania State Police Pursuit Data for the PBP for 2012, attached as Exhibit A.[1]

56.     Of those 96 high-speed pursuits stemming from minor traffic offenses in 2012, 37 ended with vehicle collisions causing property damage and bodily injuries to suspects, police, innocent bystanders, passengers and property, including one death. *See id.*

57.     In 2013, the PBP engaged in 205 high speed pursuits, 110 of which—or 53.7 percent—were initiated because of minor traffic offenses. *See* Pennsylvania State Police Pursuit Data for the PBP for 2013, attached as Exhibit B.

---

[1] This data is based on statistical information provided to the Pennsylvania State Police by the City and/or the PBP and, on information and belief, demonstrates the minimum annual number of high-speed pursuits that were initiated because of minor traffic offenses.

58. Of those 110 high-speed pursuits stemming from minor traffic offenses in 2013, 16 ended with vehicle collisions, causing property damages and bodily injuries to suspects, police, innocent bystanders, passengers and others. *See id.*

59. In 2014, the PBP engaged in 177 high speed pursuits, 102 of which—or 57.6 percent—were initiated because of minor traffic offenses. *See* Pennsylvania State Police Pursuit Data for the PBP for 2014, attached as Exhibit C.

60. Of those 102 high-speed pursuits stemming from minor traffic offenses in 2014, 25 ended with vehicle collisions causing property damage and bodily injuries to suspects, police, innocent bystanders, passengers and others. *See id.*

61. In 2015, the PBP engaged in 163 high speed pursuits, 85 of which—or 52.1 percent—were initiated because of minor traffic offenses. *See* Pennsylvania State Police Pursuit Data for the PBP for 2015, attached as Exhibit D.

62. Of those 85 high-speed pursuits stemming from minor traffic offenses in 2015, 11 ended with vehicle collisions causing property damage and bodily injuries to suspects, police, innocent bystanders, passengers and others. *See id.*

63. From 2012 through 2015, at least 89 high-speed pursuits stemming from minor traffic offenses ended with vehicle collisions causing property damage and bodily injuries to suspects, police, innocent bystanders, passengers and others.

## Count I

### Failure to Train Pursuant to 42 U.S.C. § 1983 under the Fourteenth Amendment

**(DH v. the City)**

64. All paragraphs herein are incorporated by reference.

65. Prior to the events described above, the City was on notice that "too many instances occur where [its] police pursuits create greater danger to the public than the violations [it is] seeking to address through enforcement" and that the clear majority of that danger was created by high-speed pursuits stemming from minor traffic offenses.

66. Despite Chief's Order #15-009, the City continues to permit the majority of all high-speed pursuits in which it engages to stem from minor traffic offenses and those pursuits continue to cause the greatest numbers of property damage and bodily injuries to suspects, police, innocent bystanders, passengers and others.

67. The City thus maintains a widespread custom of permitting its police officers to initiate and maintain high-speed pursuits for minor traffic offenses.

68. In this case, despite being aware of the risks of injuries to person and property because of high-speed pursuits, the City failed to train, supervise or discipline its police officers with respect to high-speed pursuits, including pursuits that are initiated because of minor traffic offenses.

69. The City also failed to properly implement, enforce or maintain a policy for traffic stops and police pursuits and/or failed to train, supervise or discipline its police officers such that high-speed pursuits through populated public thoroughfares would be avoided.

70. The City's widespread custom and failure to train, supervise or discipline its police officers on how and when to engage in high-speed pursuits, and on how and when to terminate or abandon high-speed pursuits, results in significant property damage and bodily injuries to suspects, police, innocent bystanders, passengers and others on an annual basis.

71. Because the City failed to train, supervise or discipline its police officers on how and when to engage in high-speed pursuits, and on how and when to terminate or abandon high-

speed pursuits, the Pursuing Officers initiated and maintained a high-speed pursuit of Robinson over an alleged minor traffic offense.

72. The City's failure to provide training, supervision or discipline to any individual officers, including the Pursuing Officers, on how and when to engage in high-speed pursuits, and on how and when to terminate or abandon high-speed pursuits, demonstrates its deliberate indifference to the known or obvious consequence that such a failure to train, supervise or discipline would cause DH's federally protected constitutional right to bodily integrity under the Fourteenth Amendment to be violated.

73. As a direct and proximate cause of the City's failure to provide training, supervision or discipline to any individual officers on how and when to engage in high-speed pursuits, and on how and when to terminate or abandon high-speed pursuits, including the Pursuing Officers, DH suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling her to compensatory and special damages in an amount to be determined at trial.

WHEREFORE, DH respectfully requests that judgment be entered in her favor and against the City in an amount in excess of $75,000, plus interest, costs of suit, attorney's fees and any other relief to which DH may be entitled and that this Court deems just and proper.

## Count II

## Negligence under 42 Pa.C.S.A. § 8542(b)(1)

### (DH v. the City)

74. All paragraphs herein are incorporated by reference.

75. The City had a duty to train its police officers on its high-speed pursuit policies and on how to engage in high-speed pursuits with due regard for the safety of all persons.

76. The City breached its duty by failing to train its police officers on its high-speed pursuit policies and on how to engage in high-speed pursuits with due regard for the safety of all persons such that its police officer negligently initiated and maintained a high-speed pursuit against Robinson when they should not have.

77. As a direct and proximate result of the City's negligence, DH suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling her to compensatory and special damages in an amount to be determined at trial.

WHEREFORE, DH respectfully requests that judgment be entered in her favor and against the City in an amount in excess of $75,000, plus interest, costs of suit and any other relief to which DH may be entitled and that this Court deems just and proper.

## Count III

## Negligence under 42 Pa.C.S.A. § 8522(b)(1)

## (DH v. PATCO)

78. All paragraphs herein are incorporated by reference.

79. PATCO had a duty to train its police officers on its high-speed pursuit policies and on how to engage in high-speed pursuits with due regard for the safety of all persons.

80. PATCO breached its duty by failing to train its police officers on its high-speed pursuit policies and on how to engage in high-speed pursuits with due regard for the safety of all persons such that its police officer negligently initiated and maintained a high-speed pursuit against Robinson when they should not have.

81. As a direct and proximate result of PATCO's negligence, DH suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling her to compensatory and special damages in an amount to be determined at trial.

82. WHEREFORE, DH respectfully requests that judgment be entered in her favor and against PATCO in an amount in excess of $75,000, plus interest, costs of suit and any other relief to which DH may be entitled and that this Court deems just and proper.

    Respectfully submitted,

    THE LAW OFFICES OF TIMOTHY P. O'BRIEN

    /s/ Alec B. Wright
    Alec B. Wright
    Pa. ID No. 316657

    Timothy P. O'Brien
    Pa. ID No. 22104

    239 Fourth Avenue, Suite 2103
    Pittsburgh, Pennsylvania 15222
    (412) 260-1662

    *Counsel for Plaintiff, DH*